**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CARL EVANS,

                Plaintiff,

                                       Case No. 3:11-cv-1030-J-JRK

vs.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I.  Status

Carl Evans ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). His alleged inability to work is due to "back and neck pain, hepatitis C, insomnia, degenerative disc disease, depression and anxiety."  Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed January 19, 2012, at 67. On June 15, 2009, Plaintiff filed applications for SSI and disability insurance benefits,[3] alleging an onset date of June 7, 2007. Tr. at 150-51, 154-56.  Plaintiff's applications were

---

1       Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed January 20, 2012; Reference Order (Doc. No. 14), entered January 23, 2012.

3       Plaintiff's application for disability insurance benefits was subsequently granted; therefore, that application is not at issue on this appeal.  The undersigned provides the information regarding the application for disability insurance benefits so as to present a complete background.

denied initially, <u>see</u> Tr. at 68-69, 71-72, and were denied upon reconsideration, <u>see</u> Tr. at 77-78, 80-81.

On October 27, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 42-62.  At the time of the hearing, Plaintiff was forty-nine (49) years old.  Tr. at 44.  The ALJ issued a Decision on January 3, 2011, finding Plaintiff not disabled through the date of the Decision.  Tr. at 13-35.  On June 24, 2011, the Appeals Council granted Plaintiff's request for review, Tr. at 144-47, and issued a partially favorable decision on August 17, 2011, Tr. at 1-2, 5-7.  The Appeals Council adopted the ALJ's Decision in part, but determined that Plaintiff "is entitled to a period of disability beginning on December 31, 2010, and to disability insurance benefits . . . . "  Tr. at 7.  The decision of the Appeals Council is the final decision of the Commissioner.  On October 18, 2011, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Because the Appeals Council granted Plaintiff's application for disability insurance benefits, only the SSI application is at issue on this appeal.  Plaintiff raises three issues on appeal regarding his claim for SSI.  <u>See</u> Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Supplemental Security Income (Doc. No. 16; "Pl.'s Mem."), filed March 20, 2012.  First, Plaintiff assigns error to the ALJ's step two finding, arguing that Plaintiff's anxiety should have been classified as a severe impairment.  Pl.'s Mem. at 10-12.  Second, Plaintiff claims the ALJ erred by failing to give great weight to the opinion of one of Plaintiff's treating physicians, Bienvenido Samera, M.D., P.A. ("Dr.

Samera"). Id. at 12-13.  Third, Plaintiff claims that "[s]ubstantial evidence does not support the ALJ's rejection of the [VE's] testimony that a hypothetical person with Plaintiff Evans' limitation, as set out by Doctor Samera, can't work." Id. at 14 (emphasis and capitalization omitted).  Defendant, in opposition, responds as follows: 1) the ALJ properly considered Plaintiff's allegation of anxiety and determined the anxiety is nonsevere; 2) the ALJ properly discounted the opinion of Dr. Samera; and 3) the ALJ appropriately considered the VE's testimony.  See generally  Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."), filed May 18, 2012.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

4    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 7, 2007, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine, and depressive disorder, not otherwise specified." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citations omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with limitations. [Plaintiff] can lift five pounds frequently and ten pounds occasionally. [Plaintiff] can sit for seven hours in an eight-hour workday, but must be given the opportunity to get up once an hour to loosen up. [Plaintiff] can stand and walk two hours in an eight-hour workday, for 15 minutes at a time. [Plaintiff] is limited to occasional bending, stooping, and reaching above shoulder level. [Plaintiff] can perform no work involving crawling, crouching, kneeling, or ladders, ropes or scaffolds. [Plaintiff] can perform no work around unprotected heights, no driving motorized vehicles, no use of foot controls, and no work around hazardous or moving machinery. He is limited to simple, unskilled, repetitive, routine work, of low to moderate stress, and should perform most of his work tasks alone.

Tr. at 21-22 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "service technician HVACR." Tr. at 31 (emphasis and citation omitted). At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "Paper worker";

"Addresser"; and "Surveillance system monitor."  Tr. at 32, 33-34 (emphasis and citation omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . . from June 7, 2007, through the date of th[e D]ecision."  Tr. at 34 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

**IV.  Discussion**

As noted above, Plaintiff raises three issues on appeal.   Each is addressed in turn.

**A.  ALJ's Step Two Finding**

First, Plaintiff contends the ALJ erred by finding his anxiety to be nonsevere at step two of the sequential evaluation process. Pl.'s Mem. at 10-12.  Defendant responds that the ALJ properly identified Plaintiff's severe impairments at step two.  See Def.'s Mem. at 5-6. Defendant also asserts that the ALJ properly considered the combined effect of Plaintiff's impairments at later steps of the process.  Id. at 6-7.

Step two of the sequential evaluation process requires the ALJ to determine if a claimant suffers from a severe impairment.  See 20 C.F.R. § 404.1520(a)(4)(ii).  At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]"  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment.  See id.  Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months."  Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141.  The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

With regard to mental limitations, an ALJ is required to rate degrees of limitation in four broad functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).  The Regulations provide, "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1); see also 20 C.F.R. § 404.1521.

Here, at step two, the ALJ found Plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine, and depressive disorder, not otherwise specified."  Tr. at 18 (emphasis and citation omitted).  Although not in the step-two discussion, the ALJ did thoroughly consider Plaintiff's claims of anxiety.  See Tr. at 19-22.  As far as the four broad functional areas for evaluating mental disorders, the ALJ found as follows: Plaintiff has mild difficulties in activities of daily living, Tr. at 19-20 (citing 180-87, 203-10); Plaintiff has

moderate difficulties in social functioning, Tr. at 20 (citing 203-10, 282-83); Plaintiff has moderate difficulties in concentration, persistence, or pace, Tr. at 20 (citing 282-83); and Plaintiff has experienced no episodes of decompensation of extended duration, Tr. at 20. These findings are supported by substantial evidence.

Assuming merely for purposes of argument that the ALJ erred by finding Plaintiff's anxiety is  not severe, any error would be harmless.  "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).  Even if an ALJ's finding that an impairment is not severe at step two is considered error, such error is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process."  Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) (unpublished); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

In the instant case, it is clear that the ALJ considered Plaintiff's anxiety at later steps of the sequential evaluation process.  See Tr. at 21 (stating that "the following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the . . . mental function

analysis"). The ALJ limited Plaintiff "to simple, unskilled, repetitive, routine work, of low to moderate stress, and [Plaintiff] should perform most of his work tasks alone." Tr. at 22 (emphasis omitted).[5] It follows that even if an error could be identified, the error would be harmless.

## B. ALJ's Assessment of Dr. Samera's Opinion

Plaintiff's second issue deals with the ALJ's consideration of the opinion of Dr. Samera, one of Plaintiff's treating physicians. Pl.'s Mem. at 12-13. Specifically, Plaintiff contends that the ALJ's Decision "is void of any adequate reasons as to why he [did not] rely on Dr. Samera's opinions regarding Plaintiff['s ] Mental [RFC]." Id. at 13. Defendant, responding, argues that the ALJ properly discounted Dr. Samera's opinion, and the reasons for doing so amounted to the required good cause. See Def.'s Mem. at 7-11.

Between October 1, 2008 and about December 2010, Plaintiff saw Dr. Samera approximately once per month. Tr. at 253, 255-58, 260-63, 275-80, 312-17, 343, 345-76, 378-80. Dr. Samera has a family practice at Branford Family Medical Center. See, e.g., Tr. at 255. On February 1, 2010, Dr. Samera opined, in relevant part, that Plaintiff "has an extensive history of severe Generalized Anxiety Disorder and Social Anxiety Disorder." Tr. at 343. Dr. Samera stated that Plaintiff "describes symptoms such as the inability to leave his home, the fear of public places, and has had insomnia which has prevented him from sleeping for three to four days at a time." Tr. at 343. Dr. Samera noted that Plaintiff "is currently medicated for these problems[;] however, he is still subject to panic attacks and

---

5        Plaintiff's remaining arguments that could impact the ALJ's findings in this regard are addressed in subsections IV.B. and IV.C.

episodes of depression.  The frequency of these symptoms is exacerbated when [Plaintiff] has to expose himself to crowded areas in the general public."  Tr. at 343.

In December 2010, Dr. Samera completed a "Mental Residual Functional Capacity Assessment" form, on which he opined as follows.[6]  Tr. at 378-80.  Plaintiff has moderate to marked limitations in understanding and memory; moderate to marked limitations in sustained concentration and persistence, with the exception that Plaintiff has extreme limits in his ability to complete a normal workday or workweek; mild to extreme limitations in social interaction; and moderate to marked limitations in adaptation.  Tr. at 378-80.

The Regulations instruct ALJs how to properly weigh the medical opinions[7] of treating physicians.[8]  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must

---

6        Although the form is dated, the undersigned is unable to decipher the exact date in December 2010 on which the form was completed.

7        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

8        A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

-10-

determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

In this matter, the ALJ determined that Dr. Samera's opinion "is not entitled to controlling or substantial weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the reports from the other sources who have examined [Plaintiff]."  Tr. at 28-29.  The ALJ continued by recognizing that "[n]o other treating source has assessed the level of limitations similar to those identified by Dr. Samera." Tr. at 29.  The ALJ explained that "Dr. Samera is [Plaintiff's]

pain management doctor, not a specialist in psychology or psychiatry, and his opinion is given less weight than a psychologist or psychiatrist." Tr. at 29 (stating also that "Dr. Samera is not a specialist in mental health disorders").

Prior to making the above findings and observations relating to Dr. Samera's opinion, the ALJ recognized that "Dr. Samera diagnosed [Plaintiff] with seven different diagnoses [relating to his mental health] over a period of two years; however, he did not refer [Plaintiff] to a psychologist."  Tr. at 24; see also Tr. at 26 (listing the seven mental health diagnoses). Rather, stated the ALJ, "Dr. Samera's treatment of [Plaintiff's] mental health issues was limited to medication management."  Tr. at 24.  The ALJ observed that "Dr. Samera's treatment notes indicate that [Plaintiff's] symptoms improved greatly when he took his medications."  Tr. at 26 (citing 275-80); see also Tr. at 255, 261, 262, 263, 348, 353, 364. Ultimately, the ALJ assigned Dr. Samera's opinion "little weight" because it is "inconsistent with the objective medical evidence of record and not supported by the record as a whole." Tr. at 29; see also Tr. at 30.  The ALJ did  provide "some weight" to Dr. Samera's opinion that Plaintiff has "marked limitations in concentration, persistence, and pace, and marked and extreme limitations in [the] areas of social functioning."  Tr. at 30.  The ALJ, however, based on all the evidence of record, determined Plaintiff only has moderate limitations in those areas.  Tr. at 30.

Upon review of the ALJ's decision relating to Dr. Samera's opinion, the undersigned finds that the ALJ properly discounted the opinion.  The ALJ's reasoning as set forth above amounts to the requisite "good cause" and is supported by substantial evidence.

The ALJ's assessment of Dr. Samera's opinion is further supported by the ALJ's treatment of the opinion of Raymond P. Schoenrock, Ph.D. ("Dr. Schoenrock"), a licensed psychologist, and by the ALJ's credibility finding relating to Plaintiff's testimony. Instead of relying on Dr. Samera's opinion, the ALJ assigned "[g]reat weight" to Dr. Schoenrock's opinion. Tr. at 30. Dr. Schoenrock examined Plaintiff on August 26, 2009 and authored his written opinion on August 31, 2009. Tr. at 282-83. According to the ALJ, Dr. Schoenrock's opinion was based "upon his comprehensive examination of [Plaintiff] and a thorough review of the records." Tr. at 30. The ALJ found Dr. Schoenrock's opinion to be "consistent with the other substantive medical evidence of record." Tr. at 30. The ALJ recognized Dr. Schoenrock's reported statement "that [Plaintiff] would likely have some limitations in activities of daily living only if [Plaintiff's] self-report was taken at face value." Tr. at 27 (referring to Tr. at 283).

Considering Plaintiff's credibility, the ALJ found Plaintiff's allegations of pain and anxiety inconsistent with his activities of daily living and the medical evidence of record. Tr. at 27. The ALJ determined that although Plaintiff "reported to the State agency representatives that he could not pay attention for more than five minutes at a time, . . . he reported that he played several games of chess each day." Tr. at 27 (citing Tr. at 203-10).[9] Plaintiff "also reported that he struggled to deal with people, due to his anxiety, yet he also reported that most of his housework and cooking was done by friends who visited him often." Tr. at 27. The ALJ noted that "the inconsistency between [Plaintiff's] allegations and his

---

9   The ALJ's citation is to Function Report-Adult form completed by Plaintiff on November 7, 2009. Tr. at 203-10. The ALJ stated in his Decision that Plaintiff "played several games of chess each day," Tr. at 27, even though Plaintiff reported on the form that he "tr[ied] to play a few games of chess a day," Tr. at 207. This discrepancy, however, does not affect the undersigned's overall analysis.

activities" and "the medical evidence" of record "does not support the severity of [Plaintiff's] symptoms or limitations as alleged." Tr. at 28.

Plaintiff does not directly quarrel with the ALJ's assignment of weight to Schoenrock's opinion or the ALJ's credibility assessment of Plaintiff. The undersigned has thoroughly reviewed the administrative transcript, considered the ALJ's Decision as a whole, and determines that the ALJ properly discredited Dr. Samera's opinion, especially in light of the weight assigned to Dr. Schoenrock's opinion and the ALJ's finding relating to Plaintiff's credibility. The ALJ's Decision is supported by substantial evidence.

### C. ALJ's Reliance on VE's Testimony

Plaintiff's third issue relates to the VE's testimony. Plaintiff contends that "substantial evidence does not support the ALJ's rejection of the [VE]'s testimony that a hypothetical person with Plaintiff['s ] limitation, as set out by Doctor Samera, can't work." Pl.'s Mem. at 14 (emphasis and capitalization omitted). In response, Defendant asserts that the ALJ appropriately considered the VE's testimony. See Def.'s Mem. at 11-12. "In formulating the hypothetical question to be presented to the VE," says Defendant, "the ALJ need not include alleged limitations that he does not accept as true." Id. at 11 (citing Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 268 (11th Cir. 2011)).

In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20

C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)); <u>Hudson v. Heckler</u>, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted).  "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson</u>, 284 F.3d at 1227 (citing <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999)); <u>see also</u> <u>Loveless v. Massanari</u>, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).  The ALJ, however, "is not required to include findings in the hypothetical that the ALJ . . . properly reject[s] as unsupported." <u>Crawford</u>, 363 F.3d at 1161.

The ALJ properly discounted Dr. Samera's opinion regarding Plaintiff's mental limitations.  It was appropriate, therefore, for the ALJ to exclude those limitations from the hypothetical to the VE.  <u>See</u> <u>Crawford</u>, 363 F.3d at 1161.  The ALJ's hypothetical included all those impairments which the ALJ found to be supported by the record, and in response to that hypothetical, the VE opined that there were jobs that Plaintiff could perform.  The ALJ's decision in this regard is supported by substantial evidence.

### V.  Conclusion

After due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

-15-

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 25, 2013.

JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record